UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

KEITH E. TAYLOR, TERRENCE
MCGLOTHLIN and MICHAEL JENKINS,

    Plaintiffs,

v.                                Case No:   6:17-cv-1929-Orl-40TBS

C&L TOWING AND TRANSPORT, L.L.C.
and CARL CHASE,

    Defendants.

## REPORT AND RECOMMENDATION

Pending before the Court in this Fair Labor Standards Act, as amended, 29 U.S.C. § 216(b) ("FLSA") case is Defendants' Motion for Summary Final Judgment (Doc. 76). The motion is accompanied by a workers' compensation settlement case file (Doc. 76-1); the Declaration of Defendant Carl Chase, Jr., with attached exhibits (Doc. 76-2); the Deposition of Plaintiff Keith E. Taylor (Doc. 76-3); the Deposition of Plaintiff Terrence McGlothin (Doc. 76-4); the Deposition of Opt-in Plaintiff Stanley Burton (Doc. 76-5); the Deposition of Opt-in Plaintiff Stephen Guy Black, Sr. (Doc. 76-6); the Unsworn Statement of Opt-in Plaintiff Damien Ridenour (Doc. 76-7); and the Deposition of Opt-in Plaintiff James Robert Simpson (Doc. 76-8). Plaintiffs response to the motion was filed late (Doc. 79) and Defendants have filed a reply (Doc. 80). After due consideration it is **respectfully recommended** that the motion for summary judgment be **denied.**

### Background

Named Plaintiffs Keith E. Taylor and Terrence McGlothlin filed this lawsuit on behalf of themselves and all others similarly situated (Doc. 1). They allege that they were

employed by Defendants within the last three years as tow truck workers, and that Defendants failed to pay them overtime compensation for hours worked in excess of forty per week (Doc. 1, ¶¶ 10, 14). Defendants' violations of the FLSA are alleged to be knowing, willful and in reckless disregard of the rights of Plaintiffs and all others similarly situated. (Id., ¶ 21). Defendants deny these claims and assert several affirmative defenses (Doc. 7).

Plaintiffs moved for conditional certification of the collective action and to authorize notice to potential claimants (Doc. 43). The District Court granted the motion in part, and conditionally certified the case as a collective action for: "**All tow truck drivers currently or formerly employed by C & L Towing and Transport, LLC within the three-year period immediately preceding the filing of this case to the present**" (Doc. 49).

James Simpson (Doc. 17), Michael Jenkins (Doc. 43 at 16), Stan Burton (Doc. 43 at 17), Steven Guy Black, Jr. (Doc. 43 at 18), and Damien Ridenour (Doc. 44) have all filed consents to joint this lawsuit.

The parties have taken discovery and Defendants filed the instant motion for summary judgment on March 1, 2019 (Doc. 76). The Clerk entered a Summary Judgment Notice informing Plaintiffs that they had thirty days after service of the motion to file their responses (Doc. 78). Thus, the deadline was April 1, 2019. Plaintiffs filed their response on April 5[1] (Doc. 79). In view of the filing of an amended certificate of service indicating service of the motion on one of the Opt-in Plaintiffs on March 4, 2019 (Doc. 77), and

---

[1] Plaintiff's counsel has withdrawn from representation of Opt-in Plaintiff Michael Jenkins (Doc. 74). Mr. Jenkins has filed no response to the motion for summary judgment.

absent a motion to strike for good cause, I have accepted and considered Plaintiff's response to the motion.[2]

## Discussion

### Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). An issue of fact is "genuine" if "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if the fact could affect the outcome of the lawsuit under the governing law. Id. In determining whether a genuine dispute of material fact exists, the Court must read the record and the evidence presented in the light most favorable to the non-moving party. See Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets this burden then the burden shifts to the defending party to "go beyond the pleadings," meaning the defending party must either present specific evidence showing that there is a genuine issue of material fact; or show by other means that the moving party is not entitled to judgment as a matter of law.

---

[2] In their reply, Defendants note the tardiness of Plaintiffs' response, but fail to show any prejudice resulting from the four-day delay. While the Court does not condone late filings, absent a pattern of non-compliance and in view of the preference to determine matters on the merits as opposed to default, a sanction short of striking the response is more appropriate here. Plaintiffs' counsel is **admonished** that the Court expects compliance with deadlines and any unexcused future non-compliance **will** be met with sanctions.

Id. at 324-26. In reviewing the record evidence, "the Court may not undertake the jury's function of weighing the evidence properly offered by the parties." Gordilis v. Ocean Drive Limousines, Inc., No. 12-cv-24358-JLK, 2014 WL 2214274, *1 (S.D. Fla. May 28, 2014), citing Latimer v. Roaring Toyz, Inc., 601 F.3d 1224, 1237 (11th Cir. 2010) ("Neither we nor the district court are to undertake credibility determinations or weigh the evidence."). The Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the non-moving party. O'Dell v. United States, 8:17-CV-733-T-27JSS, 2019 WL 400155, at *2 (M.D. Fla. Jan. 31, 2019).

Undisputed Facts

For present purposes, certain background facts are established.[3] Defendant Carl Chase is the Chief Executive Officer of C & L Towing and Transport LLC ("C & L") (Doc. 76-2 at ¶ 2). C & L provides motor vehicle transportation and heavy equipment hauling for compensation. (Id., ¶ 13). Plaintiffs working for C & L as tow truck drivers drove trucks weighing 10,001 pounds or more, towing vehicles and equipment (Id., ¶ 12). And, the drivers were paid on commission and in cash (Doc. 79-1 at pp. 58, 108). Most of the remaining material facts are in dispute.

Analysis

Defendants present five arguments in support of their motion: (1) that Plaintiffs are not similarly situated; (2) the Motor Carrier Act ("MCA") exemption to the FLSA applies to bar relief to Plaintiffs; (3) Plaintiffs were independent contractors and not employees; (4)

---

[3] The parties did not comply with the Court's direction in the Case Management and Scheduling Order: "On or before the date on which the memorandum in opposition is due, the parties **SHALL** also file a stipulation of agreed material facts signed by the movant and the parties opposing summary judgment pursuant to Local Rule 4.15. Material facts set forth in the stipulation will be deemed admitted for the purposes of the motion." (Doc. 26 at 8). As Plaintiffs' response was late, Defendants are not faulted for this. In the absence of the stipulation, the Court makes its own findings of fact.

- 4 -

Plaintiffs cannot establish damages; and (5) Plaintiffs' damages are limited by the statute of limitations.

*Similarly Situated Plaintiffs*

Defendants' argue that Plaintiffs are not similarly situated and do not fall within the certified class as "Mr. Ridenour testified very clearly that he was 'not a tow truck driver'" (citing "Depo, 18:8-12") and "Mr. Burton worked for Defendant as a diesel mechanic." Contrary to Defendants' assertion, Mr. Ridenour did not "testify" in a deposition. Defendants tendered his Unsworn Statement in which he gave his title as "Diesel mechanic and road service," explaining that he worked 60 to 80 hours a week for C & L (Doc. 76-7). The cited lines in his statement read:

> I wasn't a tow truck driver. I wasn't a mechanic. I was the guy who was asked to do whatever needed to be done, and that didn't matter what it was. If something needed to be taken care of there, I would take care of it.

(Doc. 76-7 at p. 18, lines 8-12).

Similarly, in his deposition, Mr. Burton testified:

> Q.  What was your job title?
>
> A.  I would say that the job that I had really didn't -- you couldn't envelope it into a single title.
>
> Q.  Would you --
>
> A.  I mean, you could say I was a diesel mechanic, but it covered so many other things that it's not really an accurate description.
>
> \*\*\*
>
> Q.  While working for C&L, did you ever work as a tow truck driver?
>
> A.  Yes.
>
> Q.  For how long did you work as a tow truck driver with C&L?

> A.· ·From when my license was reinstated until my employment was terminated.
>
> Q.· ·When was your license reinstated?
>
> A.· ·Five years ago.
>
> Q.· ·What -- what percentage of your job was acting as a mechanic and what percentage of it was acting as a tow truck driver?
>
> A.· ·I would say maybe 15 percent tow truck and 15 or -- and the remainder, you know, mechanical.

(Doc. 76-5 at pp. 7:7-13; 9:1-14).

Although Plaintiffs asked for and received permission to send notice to a class of tow truck *drivers* (Doc. 43, ¶ 3; Docs. 48, 49), their complaint alleges "Plaintiffs were employed by Defendants within the last three years as tow truck *workers*." (Doc. 1, ¶ 10-emphasis supplied). To the extent Defendants contend that Mr. Burton and Mr. Ridenour are not similarly situated to the others in the *class,* this is an issue more properly raised in a motion to decertify. Defendants cite no authority to support granting them summary judgment on the merits of the claims of these two Opt-ins based solely on any dissimilarity between them and the other Plaintiffs, and I find no reason to recommend it.

*The Motor Carrier Exemption*

Defendants contend that they do not have to comply with the FLSA because Plaintiffs are all covered by the MCA exemption. In deciding whether the MCA exemption applies, the Court must consider the nature of the employer's business as well as the specific business-related activities of the employee. The Eleventh Circuit has explained:

> The FLSA requires employers to pay employees at time-and-a-half for any time worked in excess of forty hours per week. See 29 U.S.C. § 207(a)(1). However, the act specifically exempts from this requirement "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the

provisions of" the MCA. Id. § 213(b)(1). Congress created this exemption to eliminate any conflict between the jurisdiction exercised by the Department of Labor ("DOL") over the FLSA and the mutually exclusive jurisdiction exercised by the DOT over the MCA. See Spires v. Ben Hill County, 980 F.2d 683, 686 (11th Cir.1993). Because of this congressional intent, the Secretary of Transportation does not have to exercise the authority granted to him by the MCA for the motor carrier exemption to be applicable; instead, his power to regulate under the act merely needs to cover a particular group of employees. See id.

We construe FLSA exemptions narrowly against the employer. [fn omitted] See Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 594 (11th Cir.1995) (per curiam). The employer bears the burden of showing its entitlement to the exemption. See id. The Secretary of Transportation has authority under the MCA "to regulate the maximum hours of service of employees who are employed (1) by a common carrier by motor vehicle; (2) engaged in interstate commerce; and (3) whose activities directly affect the safety of operations of such motor vehicles." Spires, 980 F.2d at 686; see also 49 U.S.C. § 31502(b)(1); 29 C.F.R. § 782.2(a). The MCA indicates that the Secretary has this power for, inter alia, all transportation described in 49 U.S.C. § 13501. See 49 U.S.C. § 31502(a)(1). Section 13501 in turn provides the Secretary with jurisdiction "over transportation by motor carrier" in various contexts, including between places in different states, between places in the same state if the transport passes through another state, and between the United States and a foreign country to the extent that the transportation occurs in the United States. [fn omitted] Id. § 13501(1)(A), (B), (E). The motor carrier exemption applies only to those employees over whom the Secretary of Transportation has this authority. See 29 C.F.R. § 782.2(a).

The applicability of the motor carrier exemption "depends both on the class to which his employer belongs and on the class of work involved in the employee's job." Id. *There are two requirements for an employee to be subject to the motor carrier exemption. First, his employer's business must be subject to the Secretary of Transportation's jurisdiction under the MCA.* See Baez v. Wells Fargo Armored Serv. Corp., 938 F.2d 180, 181-82 (11th Cir.1991) (per curiam); id. *Second, the employee's business-related activities must "directly affect[ ] the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate*

> *or foreign commerce within the meaning of the Motor Carrier Act."* Baez, 938 F.2d at 182; see also 29 C.F.R. § 782.2(a).

Walters v. Am. Coach Lines Of Miami, Inc., 575 F.3d 1221, 1226-27 (11th Cir. 2009) (emphasis added). See also Ehrlich v. Rich Products Corp., 18-12195, 2019 WL 1502279, at *2 (11th Cir. Apr. 4, 2019).

Defendants bear the burden of establishing the applicability of the exemption during the time period at issue – that is, during the employment of each Plaintiff. This presents the first challenge for Defendants. Neither side has provided evidence (testimony, time records, or other documents) to establish the exact dates of each Plaintiff's employment. Defendants paid Plaintiffs in cash and Mr. Chase testified that he "had every single file that was ever done in my business" until he moved into a new shop in December 2016, at which time "all of that got thrown out, destroyed" (Doc. 79-1 at pp. 31:19-24). Plaintiffs for their part, are far from reliable historians when it comes to dates.[4]

---

[4] For example, Plaintiff Burton testified:

```
12   Q.  When did you start working for C&L Towing?
13   A.  It would be probably around November -- it was
14   around, I think -- I don't know.  I can't give you an
15   accurate date.  I can't give you a specific date.  It
16   was six, seven years ago that I started with him.  But I
17   can't say I started on this date.  I don't know.
18   Q.  I don't need an exact date.
19       How about just a ballpark?
20   A.  Six or seven years ago.
21   Q.  When did your employment with C&L Towing end?
22   A.  January of -- I believe it was two years ago,
23   or it was near the end of the year. It could have been
24   anywhere from November to January. I don't know the --
25   again, I'm not a date person.
```

(Doc. 76-5, p. 8).

See also Deposition of Plaintiff Stephen Guy Black:

```
17   Q.  When did you begin working for C&L?
18   A.  I'm not exactly 100 percent sure on when. I'm
19   thinking in 2014 or maybe the end of 2013. I'm thinking
20   2014. I'm not 100 percent positive on that. I don't
21   know that, really. I'd have to look that up. I'm going
```

So, the exact dates of Plaintiffs' employment are, at best, disputed. For present purposes the relevant time period is three years prior to the date of filing of the lawsuit, i.e., November 8, 2014 to November 8, 2017.

Cabined to just this time period, Defendants' business may have (it has not been established), qualified as a motor carrier business. A "motor carrier" under the MCA is a "person providing commercial motor vehicle transportation for compensation." 49 U.S.C. § 13102(14). A commercial motor vehicle has a gross vehicle weight of at least 10,001 pounds. 49 U.S.C. § 31132(1). See, generally, Garcia v. JIA Logistics, Inc., 16-22870-CIV, 2017 WL 2346149, at *3 (S.D. Fla. May 30, 2017). To satisfy the exemption, C & L must show that it was subject to the Secretary of Transportation's jurisdiction and must show that Plaintiffs "(a) engaged in activities affecting the safety of operation of motor vehicles (b) while transporting passengers or property in interstate commerce. See 29 C.F.R. § 782.2." Id. The present record is insufficient to establish these requirements.

Defendants argue that C & L meets the first prong because it is subject to inspections and audits by the Federal Motor Carrier Safety Administration ("FMCSA"), its drivers comply with DOT's pre and post-trip inspection requirements, its trucks are registered with DOT, and its trucks are engaged in interstate commerce. To support these contentions, Defendants present Mr. Chase's Declaration, with attached exhibits (Doc. 76-2). According to Mr. Chase:

> 1. C & L is subject to inspections and audits by FMCSA (Decl. ¶¶ 6, 17).

---

22· with 2014.

(Doc. 76-6; p. 9).

- 9 -

> 2. During the time period of November 7, 2014 through November 7, 2017, C&L "solicits [sic] and receives [sic] interstate transport and hauling business" (Id., ¶ 7).
>
> 3. It has been subject to numerous inspections and audits by the DOT (Id., ¶ 14).
>
> 4. "[O]n numerous occasions" it has obtained fuel and trip permits for transport and hauling jobs traveling from Florida to Georgia, Alabama and South Carolina (Id., ¶ 15).
>
> 5. C&L's website states that they offer long distance towing, thereby notifying its employees and potential customers that it operates in interstate commerce (Id., ¶ 16).
>
> 6. C&L is subject to inspection and audits by FMCSA (Id., ¶ 17).
>
> 7. Drivers working for C&L were required to comply with the DOT's pre-and-post trip requirements (Id., ¶ 18).

Notably, Mr. Chase does not say anything about the volume of interstate and transport hauling business C & L engaged in. The documents attached to his Declaration purport to show: C&L's United States DOT motor carrier number is 1458839 (Id., ¶ 3); C&L's first insurance policy filed with the FMCSA became effective on June 6, 2006 (Id., ¶ 5); and C&L's FMSCA Company Snapshot states that it is engaged in interstate carrier operations (Id., ¶ 6).

If a company is licensed by the DOT and has the FMCSA authorizations necessary to be an interstate motor carrier, that suggests, but does not prove, that the DOT has exercised jurisdiction over the company. See Walters, 575 F.3d at 1227. Another difficulty with Defendants' evidence is that they have failed to show that it relates to the time period at issue. Conclusory averments that C & L is subject to inspection and audits does not show that it was subject to them during the relevant three year period. And, statements on C & L's website in 2019 say nothing about the state of the company in 2014-2017.

The FMCSA Company Snapshot (Doc. 76-2) is dated February 26, 2019. It does not provide any information as to the status of C & L's operations prior to that date. While Defendants' Exhibit 2 demonstrates that C & L filed an insurance policy with the FMSCA, that document also shows that C & L's Motor Property Common Carrier license was granted in June 2006, but *revoked* June 17, 2013, and not reinstated until September 15, 2015 (Doc. 76-2 at 12). So, it appears that C & L was not registered as a common carrier with the DOT during at least part of the relevant time period. This is consistent with Mr. Chase's deposition testimony that Defendants "actually bounced back and forth with D.O.T. numbers." (Doc. 79-1, pp. 70:18-72:3). When asked what he meant by "bounced back and forth," Chase said: "I think like one year we had with 'interstate,' and then one year we had 'intra'," but he could not remember which years were which (Id.).

The remaining exhibits to Mr. Chase's Declaration show that C & L sought permits from the states of Georgia, South Carolina and Alabama, but none of the travel appears to have taken place during the period when C & L's federal registration was active prior to the suit being filed. See Doc. 76-2 at 16-17 and at 25, 26 (travel June 2015, prior to reinstatement); Doc. 76-2 at 18-21 (travel November 2014, prior to reinstatement); Doc. 76-2 at 22 (travel November 10, 2017, after reinstatement and after suit was filed); and Doc. 76-2 at 23-24 (December 2014, prior to reinstatement). In addition, Plaintiff Keith Taylor testified that Defendants only had a single state registration when they employed Plaintiffs (Doc. 76-3 at pp. 36:8-38:9; 63:9-64:12). On this record, I cannot find as a matter of law that C & L had the appropriate federal licensing to show that the DOT exercised jurisdiction over it throughout the relevant time period or that C & L.

There are also disputed issues of fact as to whether C & L or its employees engaged in interstate activities during the relevant time period or, if they did, the extent of

those activities.[5] Although Mr. Chase has declared that during the relevant time period, C & L solicited and received interstate business, the specifics are scant. Defendants have only identified two out of state trips taken by Plaintiffs (Doc. 76 at 3, ¶¶ 10,11). This leaves a genuine issue as to whether Defendants' interstate travel was *de minimus.* See Walters, 575 F.3d at 1285 ("[T]he [d]efendant's involvement in interstate commerce must be real and actual, not merely hypothetical or conjectural. If the employer or employee's involvement in [sic] interstate commerce could be characterized as *de minimus*, they may not be subject to the Secretary of Transportation's jurisdiction at all, and thus are not covered by the Motor Carrier Act") (quoting Lieberman v. Corporate Connection Lines, Inc., No. 03-CIV-22814, 2005 WL 5501491, at *1-2 (S.D. Fla. Apr. 21, 2005)).[6] The existence of these issues of material fact preclude summary judgment as to the MCA exemption.

*Independent Contractor Defense*

Defendants argue that their affirmative defense that certain employees were independent contractors will require a fact intensive inquiry that is not appropriate for class wide determination. Therefore, they contend that this action should not proceed collectively, and the Opt-in Plaintiff's claims should be dismissed without prejudice. Once

---

[5] While purely intrastate transportation can constitute part of interstate commerce if "it is part of a continuous stream of interstate travel," meaning there is "a practical continuity of movement between the intrastate segment and the overall interstate flow," see Walters, 575 F. 3d at 1229 (internal quotation marks omitted), Defendants do not contend that its local towing services meet this test.

[6] Plaintiff Taylor testified that "we were hired for Brevard County and surrounding area. ... We were staying local for the most part." (Doc. 76-3; 35:6-13). He also testified that he did not want to go on out of state trips for Mr. Chase because "I'm not an over-the-road driver for him. He wasn't permitted. He wasn't licensed. He didn't have IFTA. He did not have an IRP registration. He did not have a USDOT. He had Florida DOT." (Doc. 76-3; 36:10-14). Compare Walker v. Coen Auto Transporters, Inc., 6:14-cv-1907-Orl-31KRS, 2015 WL 12684459, at *2-3 (M.D. Fla. Nov. 10, 2015) (Driver's testimony that upon hire, he was told he would be a local driver and would not be leaving the state, he drove the same truck during his entire employment and was told it did not have the proper license, motor carrier number, or authority to leave the state, viewed in the context of Defendant's business operations, created genuine issues of material fact which preclude summary judgment with respect to the interstate motor carrier exemption to the FLSA).

again, Defendants confuse a motion for decertification with a summary judgment motion. Absent any arguments on the merits of the defense, there is no basis to grant summary judgment. To the extent Defendants seek decertification they should file a properly supported motion for that relief. The paltry analysis here is insufficient to warrant serious consideration.

*Damages*

Defendants' final contention is that Plaintiffs cannot establish damages and are not entitled to any damages outside of the applicable statute of limitations period.

The FLSA requires covered employers to maintain certain employee records, including records of their employees' wages paid and hours worked. 29 U.S.C. § 211(c); see also 29 C.F.R. § 516.2 (listing records and information employers must keep). According to the Eleventh Circuit:

> Although an employee bears the initial burden of proving that he worked overtime without compensation, "[t]he remedial nature of [the FLSA] and the great public policy which it embodies ... militate against making that burden an impossible hurdle[.]" Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946). Indeed, "[i]t is the employer's duty to keep records of the employee's wages, hours, and other conditions and practices of employment." Allen [v. Bd. of Pub. Educ. for Bibb Cty.,] 495 F.3d [1306] at 1315 [(11th Cir. 2007)]. In situations where an employer has failed to keep proper and accurate records and an employee cannot offer convincing substitutes, the employee "has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Anderson, 328 U.S. at 687, 66 S.Ct. 1187. See also Lamonica v. Safe Hurricane Shutters, Inc., 711 F.3d 1299, 1315 (11th Cir. 2013) (describing an FLSA plaintiff's burden as "relaxed" if an employer has failed to keep adequate time records). The burden then shifts to the employer, who "must bring forth either evidence of the precise amount of work performed or evidence to negate the reasonableness of the inference to be

> drawn from the employee's evidence." Allen, 495 F.3d at 1316 (citing Anderson, 328 U.S. at 687-88, 66 S.Ct. 1187). "If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate." Id. (quoting Anderson, 328 U.S. at 688, 66 S.Ct. 1187).

Medrano v. The Inv. Emporium LLC, 672 F. App'x 944, 947-48 (11th Cir. 2016).

Defendants argue that Plaintiffs offer only vague and contradictory assertions and "have not stated with any clarity or precision the number of hours they allegedly worked, the amount or nature of that work, where or when the work was completed, or anything else that would assist a factfinder in approximating the alleged unpaid overtime at issue." (Doc. 76 at 12). Plaintiffs counter that any lack of precision is due to Defendants' failure to maintain the required time records. They note that Mr. Chase has admitted that they worked overtime,[7] and there is evidence that Defendants did not pay Plaintiffs time and one-half the regular rate for overtime worked, supposedly because they were paid on commission. (See Doc. 79-1 at pp. 30:11-21; Doc. 76-7 at pp. 57:1-3; Doc. 76-5 at pp. 32:5-7).

This record is insufficient to warrant a summary finding. It is true that Plaintiffs are far from precise in reciting the details of each hour they worked. Nonetheless, each Plaintiff except Michael Jenkins[8] has presented some sworn evidence of his claim and, considering the relaxed burden due to Defendants' failure to keep time records, Defendants' decision to pay Plaintiffs in cash, and viewing the record in the light most favorable to Plaintiffs, there is enough here to survive a summary judgment motion.

---

[7] At deposition, Mr. Chase acknowledged: "You know, at some point or another I'm sure we all worked more than 40 hours in a workweek." (Doc. 79-1, Chase Deposition: 33:4-13).

[8] See, e.g., Doc. 62.

- 14 -

Defendants correctly note that Mr. Ridenour stated he does not know how many hours he is owed. However, his comments in an unsworn statement are not evidence. Rather, the Court looks to the sworn evidence from Mr. Ridenour, i.e., his interrogatory answers (Doc. 66). There, Mr. Ridenour said he worked Monday through Saturday from 8:00 a.m. to 5:00 p.m., took the service truck home and was on-call 24 hours a day to assist in repairs to vehicles. He testified to working 20 overtime hours for each of 52 weeks while being paid $700 per week (Doc. 66 at 7-8). This sworn testimony, if credited, would allow a jury to approximate damages. Similarly, in his deposition, Mr. Black estimated that due to the 24 hour on call work, he worked over 40 overtime hours a week (Doc. 76-6 at pp. 19:2). This is consistent with his sworn interrogatory answers which calculate his claim more precisely (Doc. 68 at pp. 7-8). Mr. Burton has also given interrogatory answers which detail his claim (Doc. 67) and he testified in deposition that he averaged 65 hours a week at a rate of pay of $500 per week (Doc. 76-5 at pp. 10:15-18, 17:20-21). With respect to Mr. Taylor, Defendants argue that "there is nothing beyond his testimony to support his claim" and his testimony is "not reliable" (Doc. 76 at 15). This argument is misplaced because questions of credibility are not for the Court on summary judgment. In sum, except for Mr. Jenkins, the record includes enough evidence to warrant denial of the motion.[9]

Mr. Jenkins has not responded to the motion, has not provided discovery, and it appears that he has abandoned his claim (Docs. 61, 62, 72, 74, 75). It is therefore **respectfully recommended** that his claim be dismissed, for failure to prosecute.

---

[9] For similar reasons, limiting the damage claim to only those damages within the statute of limitations is not a summary judgment issue.

- 15 -

### Recommendation

Because there is a genuine dispute over material facts, it is **respectfully recommended** that the motion for summary judgment be **DENIED**, and that all of Mr. Burtons claims be dismissed without prejudice for failure to prosecute.

### Notice to Parties

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1.

**RESPECTFULLY RECOMMENDED** at Orlando, Florida on April 23, 2019.

_____
THOMAS B. SMITH
United States Magistrate Judge

Copies furnished to:

    Presiding United States District Judge
    Counsel of Record
    Any Unrepresented Parties